[COMMENT1] 

 

 

 

 

 

                                      COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
2-00-183-CV

 

 

THE
CITY OF KELLER                                                           APPELLANT

 

                                                   V.

 

JOHN
W. WILSON,                                                               APPELLEES

GRACE S. WILSON,

JOHNNY L. WILSON, AND 

NANCY
A. WILSON                                                                              

 

 

                                              ------------

 

            FROM THE 96TH
DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

          OPINION ON REMAND AND ON
REHEARING EN BANC

 

                                              ------------

I. 
Introduction

We grant the City of Keller=s
motions for rehearing and en banc rehearing, withdraw our opinion and judgment
of June 22, 2006, and substitute the following. 








John W. Wilson, Grace S. Wilson, Johnny L.
Wilson, and Nancy A. Wilson sued the City for inverse condemnation and water
code violations.  The Supreme Court of
Texas remanded this case to us after rendering judgment that there is no
evidence supporting the intent element of the Wilsons= inverse
condemnation claim.[1]  In our initial opinion on remand, we
addressed the City=s seventh issue on appeal, which
challenges the legal and factual sufficiency of the evidence to support the
jury=s finding
that the City violated section 11.086 of the Texas Water Code because it Adiverted
the natural flow of surface water in a manner that damaged@ the
Wilsons=
property.[2]  We held, with one justice dissenting, that
there is legally and factually sufficient evidence to support this finding and
affirmed the trial court=s judgment on the Wilsons= water
code violation claim.[3]








In its motion for rehearing, the City argues that
the Wilsons cannot recover from the City on their water code violation claim
because the City is immune from suit on that claim.[4]  Because we conclude that the City is immune
from suit on the Wilsons= water code violation claim and
that neither the Legislature nor the City has waived the City=s
immunity from suit, we dismiss the claim and vacate the trial court=s
judgment for the Wilsons on that claim.

II. 
Factual Background

The Wilson property is located southeast of the
Oak Run and Rancho Serena subdivisions in the City of Keller.  A piece of land owned by A.T. Sebastian lies
between the Wilson property and the subdivisions.  In 1991, before the Oak Run and Rancho Serena
subdivisions were built, the City approved a Master Drainage Plan providing for
drainage easements across both the Wilson and Sebastian properties into the
Little Bear Creek Watershed.  The City=s codes
require developers to comply with the Master Plan, to provide drainage for a
100‑year rain event, and to avoid increasing the volume or velocity of
water discharged upon downhill properties.








The developers of Oak Run and Rancho Serena
submitted plans to the City indicating that they would buy a drainage easement
and build a ditch forty‑five feet wide and more than two hundred yards
long across the Sebastian property and deed both to the City upon
completion.  The plans also included
detention basins on the subdivision properties, but they omitted any drainage
easement or ditch across the Wilson property. 
The City=s director of public works
approved the developers= plans, and the City accepted
the works upon their completion.

In
accordance with the Master Plan, the City built a box culvert south of the
Wilson property, but because the developers= drainage ditch ended at the Wilsons= north property line,
there was no link between the ditch and the box culvert.  The Wilsons alleged and the jury found that
this omission caused the diversion of the natural flow of surface water across
the Wilson property, ruining eight acres of farmland that the jury valued at
almost $300,000.

 

                             III.  Sovereign Immunity From Suit

 

The City argues that the Wilsons= claim
against it under section 11.086 of the water code is barred by sovereign
immunity and that its immunity has not been waived because there is no clear
and unambiguous language in the water code that evidences legislative intent to
waive immunity. 

Section 11.086 of the water code provides, 

(a)  No person may divert or impound the natural
flow of surface waters in this state . . . in a manner that damages the
property of another by the overflow of the water diverted or impounded.

 








(b) A person whose property is injured by an
overflow of water caused by an unlawful diversion or impounding has remedies at
law and in equity and may recover damages occasioned by the overflow.[5]

In Texas, sovereign immunity deprives a trial
court of subject matter jurisdiction for lawsuits in which the state or certain
governmental units have been sued unless the state consents to suit.[6]  A municipality is immune from suit for torts
committed in the performance of its governmental functions.[7]  A plaintiff who sues a governmental entity
must establish the consent to suit.[8]








Subject matter jurisdiction is essential to a
court=s
authority to decide a case.[9]  It cannot be waived and may be raised for the
first time on appeal.[10]  Whether a court has subject matter
jurisdiction is a question of law.[11]  If a trial court lacks subject matter
jurisdiction over a claim, the claim must be dismissed.[12]  Therefore, unless the Legislature has waived
the City=s
sovereign immunity from suit for the Wilsons= claim
that the City violated the water code by diverting surface water across the
Wilson property, the trial court had no subject matter jurisdiction over that
claim, and we must dismiss it.

             A.  Clear and Unambiguous Waiver of Sovereign
Immunity

                                   in
the Statute=s Language

 








It is well-settled law in Texas that for the
Legislature to waive a municipality=s
sovereign immunity from suit, the statute at issue must contain a clear and
unambiguous expression of the Legislature=s waiver
of immunity.[13]  In 2001, the Legislature codified this
standard by adding section 311.034 to the Code Construction Act, which provides
as follows:  AIn order
to preserve the legislature=s
interest in managing state fiscal matters through the appropriations process, a
statute shall not be construed as a waiver of sovereign immunity unless the
waiver is effected by clear and unambiguous language.@[14]








The water code does not contain the type of
language that the Legislature generally uses to confirm its intent to waive
immunity from suit.[15]  We must, therefore, examine four factors
promulgated by the supreme court to determine whether the water code contains
otherwise clear and unambiguous waiver language.[16]  First, the supreme court has held that a
statute that waives immunity must do so Abeyond doubt,@ although the
statute need not be a model of perfect clarity.[17]  Second, when construing a statute that
purportedly waives sovereign immunity, the supreme court generally resolves
ambiguities by retaining immunity.[18]  Third, if the Legislature requires the State
to be joined in a lawsuit for which immunity would otherwise attach, the
supreme court has held that the State=s sovereign
immunity has been intentionally waived.[19]  The fourth factor the supreme court considers
when deciding whether the Legislature intended to waive sovereign immunity is
whether the statute provides an objective limitation on the State=s potential
liability in order to insulate public resources from the reach of judgment
creditors.[20]  If such a limitation exists, the court is
likely to find waiver.[21]

We will now apply these principles to determine whether the
Legislature waived the City=s sovereign
immunity from suit by enacting section 11.086 of the water code.








The Wilsons contend that the Legislature expressly waived
the City=s sovereign
immunity because the term Aperson@ in section
11.086(a) includes municipalities.  The
Wilsons acknowledge that the term Aperson@ is not expressly
defined in the water code.  They observe,
however, that section 1.002 of the water code provides that section 311.005 of
the government code applies to the water code,[22]
and that section 311.005 of the government code defines Aperson@ to include Agovernment
or governmental subdivision or agency.@[23]  According to the Wilsons, by incorporating
the government code=s definition of person into
section 11.086(a) of the water code, the Legislature clearly and unambiguously
meant to waive the City=s immunity from suit.








The Supreme Court of Texas has held, however, that
the mere incorporation of a definition from one statute into another that
includes both private and governmental entities does not clearly express
legislative intent to waive the governmental entities=
immunity from suit.[24]  For example, in Wichita Falls State
Hospital v. Taylor, the supreme court held that the Legislature=s
authorization of a suit against a Amental
health facility@ in section 321.003 of the
health and safety code (the patient=s bill
of rights) was not a clear and unambiguous waiver of sovereign immunity.[25]  AMental
health facility@ is not defined in chapter 321
of the health and safety code; instead, the statute incorporates the definition
of mental health facility found in section 571.003 of the health and safety
code, which includes both private and governmental entities.[26]  Upon concluding that the patient=s bill
of rights does not waive the State=s
immunity beyond doubt because the statute achieved its stated objective of
regulating private treatment facilities even if suit against the State is
barred by immunity, the supreme court held,








At best, the incorporation of section 571.003 into section 321.001[27]
sewed ambiguity into the statute.  But in
cases like this, we require the Legislature to express its intent beyond doubt
and will construe ambiguities in a manner that retains the State=s immunity. . . .  The statute=s ambiguity precludes our
finding an unmistakable Legislative intent to waive sovereign immunity.[28]

 








Likewise, the water code=s
incorporation of the definition of Aperson@ from
section 311.005 of the government code does not waive the City=s
immunity beyond doubt.  The water code=s
provisions undoubtedly apply to private individuals and entities, so they are
not without meaning or purpose if they are construed against waiver.  Moreover, the incorporation of section
311.005 of the government code into the water code creates an ambiguity.[29]  In such a case, we must construe any
ambiguities in a manner that retains the City=s
immunity.[30]  The water code=s
ambiguity with regard to the use of Aperson@
precludes our finding Aan unmistakable legislative
intent to waive immunity.@[31]








The third factor we must consider is whether the
statute requires the governmental entity to be joined in the lawsuit.[32]  Nothing in chapter 11 of the water code
requires the government to be joined in a lawsuit for a water code violation
arising out of the alleged diversion of surface waters onto a person=s
property.[33]  The lack of such a requirement is yet another
indication that the Legislature did not intend to waive immunity simply by
incorporating the government code=s
definition of person into water code section 11.086.[34]








The final factor we consider is whether the
statute provides an objective limitation on the State=s potential
liability.[35]  When the Legislature waives immunity, it
generally includes in the statute a measure designed to protect the public
treasury from the consequences of the waiver.[36]  Chapter 11 of the water code contains no such
provision.  Therefore, the fact that the
Wilsons= construction
of the water code would subject the City to indeterminate damages awards
without limitation reinforces our conclusion that the Legislature did not
intend to waive sovereign immunity by mere implication.[37]

For all of these reasons, we hold that the Legislature=s incorporation of
the definition of Aperson@ from
government code section 311.005 into the water code does not
constitute a clear and unambiguous waiver of immunity from suit for a violation
of water code section 11.086(a).[38]


  B.  Waiver of Sovereign Immunity by Praying for
Costs and Attorney=s Fees








The Wilsons contend that, even if the Legislature
did not waive the City=s immunity from suit in the
water code itself, the City waived its immunity by requesting in the prayer of
its answer that it Arecover its costs and attorney=s fees,
as well as any other relief, at law and equity, to which it is justly entitled.@ 

Recently, in Reata Construction Corp. v. City
of Dallas, the supreme court held that a city can waive its immunity from
suit if it Ahas joined into the litigation
process by asserting its own affirmative claims for monetary relief.@[39]  In that situation, the municipality Aleave[s]
its sphere of immunity from suit for claims against it which are germane to,
connected with and properly defensive to the claims the City asserts.@[40]  To qualify as a claim for affirmative relief,
the supreme court has held that a defensive pleading must allege that the
defendant has a cause of action, independent of the plaintiff=s claim,
on which the defendant could recover benefits, compensation, or relief, even
though the plaintiff may abandon his cause of action or fail to establish it.[41]








In this case, the City=s
defensive pleadings do not urge a counterclaim against the Wilsons.  Nor has the City asserted a cause of action,
independent of the Wilsons= water
code claim, on which it could obtain relief even if the Wilsons abandoned or
failed to establish their claim.  Unlike
a defensive claim for attorney=s fees
in a declaratory judgment action, the City=s prayer
for attorney=s fees has no basis in a
statute, a common-law theory of recovery or an equitable claim for relief, and
it would not be sufficient to support recovery of attorney=s fees
if the Wilsons= claim were nonsuited or
dismissed.[42]  Therefore, we hold that the City did not
waive its sovereign immunity from suit by including in its defensive pleading a
prayer for costs and attorney=s fees.








                                          VI.  Conclusion

Because the Legislature did not
waive the City=s immunity from suit for the
Wilsons= water
code violation claim, and because the City did not waive its immunity by requesting
costs and attorney=s fees in the prayer of its
defensive pleading, we hold that the trial court lacked subject matter
jurisdiction over the Wilsons= water
code violation claim.  Therefore, we
vacate the trial court=s judgment for the Wilsons on
their water code violation claim and dismiss that claim.[43]

 

JOHN
CAYCE

CHIEF
JUSTICE

 

EN BANC

 

LIVINGSTON, J. filed a
concurring and dissenting opinion in which

DAUPHINOT, J. joined.

 

WALKER, J. filed a
dissenting opinion in which MCCOY, J. joined. 

 

DELIVERED:   March 1, 2007

 











 
 
 
 
 
 
 




 

 

 

 

 

                                                                                                        

                                      COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
2-00-183-CV

 

 

THE CITY OF KELLER                                                           APPELLANT

 

                                                   V.

 

 

JOHN W. WILSON, GRACE S. WILSON,                                   APPELLEES

JOHNNY L. WILSON, AND
NANCY A. WILSON

 

 

                                              ------------

 

            FROM THE 96TH
DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                CONCURRING AND DISSENTING
OPINION ON

                 REMAND AND ON
REHEARING EN BANC

 

                                              ------------

I respectfully concur and dissent to the majority
opinion for four reasons.








First, this court is being asked to entertain a
plea to the jurisdiction on remand from the Texas Supreme Court.  This is the first time that the City of
Keller has actually asked this case to be dismissed due to a lack of
jurisdiction despite the case having been tried to a jury, appealed to this
court, and reviewed in the supreme court. 
This case has been pending for over six years and only on remand from
the supreme court did the City pursue its plea as to this claim.[1]  

While we are required to sua sponte determine our
own jurisdiction and that of the trial court, it is difficult to see the equity
in the City=s pursuit of the issue at this
late date.  Parties and courts should
determine jurisdiction at the earliest possible moment to prevent or limit
waste of judicial resources and the expense of unnecessary litigation.  See Tex. Dep=t of
Parks & Wildlife v. Miranda, 133 S.W.3d 217, 226 (Tex.
2004); City of Kemah v. Vela, 149 S.W.3d 199, 202 (Tex. App.CHouston
[14th Dist.] 2004, pet. denied).  We are
being asked to rule today on an issue that the trial court never ruled
upon.  Usually, this would preclude
appellate review of such a complaint.  See
Tex. R. App. P. 33.1(a); Bushell
v. Dean, 803 S.W.2d 711, 712 (Tex. 1991) (op. on reh=g).  However, because lack of jurisdiction relates
to fundamental error, we are required to address it, even now.  See Wal-Mart Stores, Inc. v. Alexander,
868 S.W.2d 322, 328 (Tex. 1993).  








Moreover, had the City urged this issue in the
trial court originally, the Wilsons would have been afforded an opportunity to
replead in order to more clearly assert additional jurisdictional facts and
theories.  See Miranda, 133 S.W.3d
at 226-27; Hammons v. City of Krugerville, No. 02-04-00353-CV, 2005 WL
2838602, at *1 (Tex. App.CFort Worth Oct. 27, 2005, pet.
denied) (mem. op.); see also Cronen v. Ray, Nos. 14-05-00788-CV,
14-05-00789-CV, 2006 WL 2547989, at *3 (Tex. App.CHouston
[14th Dist.] Sept. 5, 2006, no pet. h.).

Subject matter jurisdiction cannot be conferred
by waiver or estoppel at any stage of a proceeding.  Juarez v. Tex. Ass=n of
Sporting Officials, 172 S.W.3d 274, 278 (Tex. App.CEl Paso
2005, no pet.).  Generally, one
may not assert estoppel against a city where such would interfere with a city=s
performance of a governmental function.  City
of White Settlement v. Super Wash, Inc., 198 S.W.3d 770, 773-74 (Tex.
2006).  However, the Texas Supreme Court
acknowledged that it has recognized a very limited exception to this rule Awhere
justice requires its application, and there is no interference with the
exercise of [a city=s] governmental functions.@  Id. at 774 (citing City of Hutchins
v. Prasifka, 450 S.W.2d 829, 836 (Tex. 1970)); City of Dallas v.
Rosenthal, 239 S.W.2d 636, 646 (Tex. Civ. App.CDallas
1951, writ ref=d n.r.e.).  Estoppel may be asserted against a city when Ajustice
requires@ and
claimants might otherwise be completely denied relief.  Super Wash, 198 S.W.3d at 775.  








Here, the Wilsons will be denied the judgment the
jury rendered in their favor, i.e., all relief, if the City=s late
pursuit of its jurisdictional challenge is granted.  Further, the Wilsons have been denied their
right to replead their jurisdictional basis because of the City=s delay
and failure to timely pursue its jurisdictional challenges in the trial
court.  The majority opinion accepts this
result even though a timely raised jurisdictional challenge would have afforded
the Wilsons the opportunity to replead. While I acknowledge we cannot establish
a court=s
jurisdiction by estoppel, we could estop the City from complaining should we
allow the Wilsons the opportunity to replead and have the case retried, if
necessary.  When we apply the dictates of
Super Wash, we can see that there is no interference with the City=s
governmental functions by estopping the City from this type of procedural
complaint. 








Second, I believe that the majority opinion
overstates the immunity a municipality has for its governmental functions.  The majority says that a municipality is
immune from suit for torts committed in the performance of governmental
functions, citing the supreme court=s recent
opinion of Tooke v. City of Mexia. 
197 S.W.3d 325, 343 (Tex. 2006). 
Under the common law, this would have been a correct blanket
statement.  City of Tyler v. Likes,
962 S.W.2d 489, 501 (Tex. 1997).  But
under the current Texas Tort Claims Act, section 101.0215 provides for a
limited waiver of a municipality=s
immunity from liability for damages arising from its governmental functions up
to the damages caps if the cause of action arises from conduct that otherwise
falls within the classes of waiver of immunity authorized by the Act.  Tex.
Civ. Prac. & Rem. Code Ann. '
101.0215(a) (Vernon 2005); McKinney v. City of Gainesville, 814 S.W.2d
862, 865 (Tex. App.CFort Worth 1991, no writ).  Therefore, if the alleged conduct falls
within a governmental function category, we must then look to see whether the
conduct alleged also falls within one of the other provisions of chapter 101
that waives immunity.  See Tex. Civ. Prac. & Rem. Code Ann. ''
101.021-.022 (Vernon 2005 & Supp. 2006); Miranda, 133 S.W.3d at 225;
City of Fort Worth v. Gay, 977 S.W.2d 814, 817 (Tex. App.CFort
Worth 1998, no pet.); McKinney, 814 S.W.2d at 865.  








Restated, a municipality waives its
immunity from liability, up to the caps, 
for Adamages arising from its
governmental functions@ if that conduct
otherwise falls within the Texas Tort Claims Act.  Vela, 149 S.W.3d at 203 n.1; see
Martinez v. City of San Antonio, No. 04-05-00775-CV, 2006 WL 3497250, at *5
(Tex. App.CSan Antonio Dec. 6, 2006, no
pet.); Pakdimounivong v. City of Arlington, No. 02-05-00414-CV, 2006 WL
3438218, at *4(Tex. App.CFort Worth Nov. 30, 2006, no
pet. h.); McKinney, 814 S.W.2d at 865. 
Additionally, we know that section 101.025 of the Act waives sovereign
immunity from suitCincluding governmental immunity
from suitCto the extent liability is
waived under chapter 101.  Tex. Civ. Prac. & Rem. Code Ann. '
101.025.  Therefore, should we determine
that liability exists for some governmental function conduct then, in that
event, immunity from suit would also be waived. 
See id.; Miranda 133 S.W.3d at 224.

Third, I do not agree that the amendment to
section 311.034 of the code construction act applies to this case as claimed by
the majority opinion.  Tex. Gov=t Code Ann. ' 311.034
(Vernon Supp. 2006).  That provision,
which states that Aa statute shall not be construed
as a waiver of sovereign immunity unless the waiver is effected by clear and
unambiguous language,@ was not effective until June
2001; the judgment in this case was entered in March 2000, well before the
statute=s
effective date. Thus, I believe we should apply the common law standard
espoused in City of La Porte v. Barfield.  898 S.W.2d 288, 291 (Tex. 1995) (holding
similarly that we look to whether the language waiving governmental immunity is
clear and unambiguous, in light of legislative intent).

Lastly, I do not agree with all of the majority=s
analysis on each of the Wichita Falls State Hospital v. Taylor factors
we are to apply in trying to determine if the legislature intended for a
statuteChere,
the water codeCto waive governmental
immunity.  106 S.W.3d 692, 697-98 (Tex.
2003).  








The third Taylor factor asks whether the
statute involved requires the government to be joined in the litigation.  106 S.W.3d at 697-98.  The majority says that because the water code
does not require the City to be joined, this factor weighs against
waiver of immunity.  However, this begs
the question because in this case the City is the actual owner of the
easement.  The easement was granted to
the City in 1997; thus, the City was a necessary and indispensable party at the
time the Wilsons filed suit.  Tex. R. Civ. P. 39(a).  Therefore, I believe this factor weighs in
the Wilsons= favor.








Likewise, I disagree with the majority=s
analysis of the fourth Taylor factor: 
whether the water code provides an objective limitation on the
governmental unit=s potential liability.  Taylor, 106 S.W.3d at 698.  The majority concludes that this factor
weighs against the Wilsons because the water code itself contains no limitation
on potential liability for the City.  See
Tex. Water Code Ann. ''
1.001-222.031 (Vernon 2000, 2002, 2004 & Supp. 2006). I agree that the
water code itself contains no limitation on damages.  However, because the City relies on the Tort
Claims Act in asserting that the Wilsons= cause
of action involves a Agovernmental function,@
specifically Asanitary and storm sewers@ under
section 101.0215(a)(9) of the Tort Claims Act, and because the cause of action
is one sounding in tort, we should use and apply the caps of the Act itself to
limit the damages.  Tex. Civ. Prac. & Rem. Code Ann. ''
101.0215(a)(9), 101.023(c) (capping monetary damages against
municipality).  Therefore, I would
conclude that this factor weighs in favor of the Wilsons.

I believe the majority is correct in looking at
the late-pursued immunity and jurisdictional issue, however, I also believe we
should allow the Wilsons an opportunity to replead their water code cause of
action.  While this quite necessarily may
require a retrial of this cause of action, I believe the interests of justice
demand it and that the City should be estopped from contesting the Wilsons= right
to pursue it.  For all of these reasons,
I respectfully concur and dissent with the majority opinion.

 

 

TERRIE
LIVINGSTON

JUSTICE

 

DELIVERED: March 1, 2007

 

DAUPHINOT, J. joins in
this concurring and dissenting opinion. 











 
 
 
 
 
 
 




 

 

 

 

 

 

                                      COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
2-00-183-CV

 

THE
CITY OF KELLER                                                           APPELLANT

 

                                                   V.

 

JOHN
W. WILSON,                                                               APPELLEES

GRACE S. WILSON,

JOHNNY L. WILSON, AND 

NANCY A. WILSON

                                              ------------

 

            FROM THE 96TH
DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                    DISSENTING OPINION ON
REMAND AND 

                           ON
REHEARING EN BANC 

 

                                              ------------

I respectfully dissent.  I would deny the City of Keller=s motion
for rehearing.








This case was filed in 1996, tried in 2000,
affirmed on appeal by this court in 2002,[1]  and reversed by the supreme court in 2005.[2] 
Despite traveling through three Texas courts for over nine years, the
City of Keller never sought a ruling from any of these courts that it possessed
governmental immunity from the Wilsons=
water-code-violation claim.  Only after
the supreme court issued its mandate and remanded the case to us did the City
of Keller decide to raise the issue of governmental immunity.[3]  In
2006, we issued an opinion on remand that did not address the governmental
immunity claim raised by the City of Keller because the issue was raised on
remand to this court for the first time via supplemental briefing, which we
denied leave to file.[4]  Because I believe that the City of Keller=s effort
to raise this issue on remand comes too late and because I believe that the
supreme court=s mandate precludes us from
addressing this issue, I dissent.













While typically a lack of subject matter
jurisdiction may be raised at any time, logic dictates that some outer limit
must exist to this proposition of law.[5]
Clearly, the Legislature intended that the issues of governmental immunity and
subject matter jurisdiction be finally resolved prior to trial.  That is why the Legislature statutorily
authorized interlocutory appeals of these issues.  See Tex.
Civ. Prac. & Rem. Code Ann. '
51.014(a)(5), (8) (Vernon Supp. 2006). 
The City of Keller pleaded governmental immunity in 1996, but then sat
on its rights, never seeking a ruling on the issue until now.  The issue of the City of Keller=s
now-alleged governmental immunity from the Wilsons=
water-code-violation claim should have been resolved approximately seven years
ago in the trial court before this claim was submitted to the jury.  Or, it should have been raised as an issue in
the appeal perfected in our court.[6]  Or, it should have been raised as a
conditional issue in the City of Keller=s
petition for review in the supreme court.[7]  Or, it should have been raised in a motion
for rehearing in the supreme court.[8]  Or, it should have been raised in a motion to
recall the supreme court=s mandate.[9]  It
was not.[10]








Despite multiple opportunities to raise the issue
of governmental immunity at multiple junctures in this litigation, the City of
Keller waited until after the supreme court issued its mandate to seek a ruling
on its alleged governmental immunity from the Wilsons=
water-code-violation claim.  The supreme
court=s
mandate remanding this case to our court orders us to consider on remand Athe
other issues raised on appeal.@[11]  Because the City of Keller=s
purported governmental immunity from the Wilsons=
water-code-violation claim was not raised in the trial court, was not raised as
an issue in this court, was not raised as a conditional issue in the supreme
court, was not raised in a motion for rehearing in the supreme court, and was
not raised in a motion to recall the supreme court=s
mandate, at this point in time, it is not and can never be an Aother
issue raised on appeal.@ 
It was not raised.  We have no
power to exceed the scope of the supreme court=s
mandate.  See, e.g., Tex.
Workers= Comp. Ins. Fund v. Mandlbauer, 34
S.W.3d 909, 911-12 (Tex. 2000); Fletcher v. Blair, 874 S.W.2d 83, 87 n.1
(Tex. App.CAustin 1994, writ denied); accord
Harris County Children=s
Protective Servs. v. Olvera, 77 S.W.3d 336, 340 (Tex. App.CHouston
[14th Dist.] 2002, pet. denied)  (holding
trial court cannot exceed scope of appellate court mandate by addressing issues
not set forth in mandate); Kahn v. Seely, 37 S.W.3d 86, 88 (Tex. App.CSan
Antonio 2000, no pet.) (same); Owens v. Lubbock ISD, 237 S.W.2d 711, 712
(Tex. Civ. App.CAmarillo 1950, writ ref=d
n.r.e.) (same).  Because the supreme
court=s
mandate instructs us to address only the Aother
issues raised on appeal@ and because the issue of the
City of Keller=s alleged governmental immunity
from suit for the Wilsons= water-code-violation claim is
not one of the Aother issues raised on appeal,@ it
falls outside the scope of the supreme court=s
mandate to this court.      For these
reasons, I would deny the City of Keller=s motion
for rehearing.  

 

SUE
WALKER

JUSTICE

 








MCCOY, J. joins in this
dissenting opinion.

 

DELIVERED:  March 1, 2007











[1]City of Keller v. Wilson, 168 S.W.3d 802, 830
(Tex. 2005).





[2]See Tex. Water Code Ann. ' 11.086(a) (Vernon 2000) (ANo person may divert or
impound the natural flow of surface waters in this state . . . in a manner that
damages the property of another by the overflow of the water diverted or
impounded.@).  The jury found for the Wilsons on their
causes of action for both inverse condemnation and water code violations, and
the Wilsons elected to recover on their inverse condemnation claim.  On original submission, we did not address
the City=s issue challenging the
water code violation finding because, with one justice dissenting, we upheld
the jury=s inverse condemnation
finding.  See City of Keller v. Wilson,
86 S.W.3d 693, 709 (Tex. App.CFort Worth 2002), rev=d, 168 S.W.3d 802 (Tex.
2005).





[3]City of Keller v. Wilson, No. 02-00-00183-CV, 2006
WL 1716130, at *7 (Tex. App.CFort Worth June 22, 2006, no pet. h.) (op. on reh=g); see Tex. Water Code Ann. ' 11.086(a)B(b).





[4]The City also raised this
issue in a supplemental appellant=s brief tendered before submission of this case
on remand. 





[5]Tex.
Water Code Ann.
' 11.086(a)B(b).





[6]Tex. Dep=t of Parks & Wildlife v.
Miranda, 133
S.W.3d 217, 224 (Tex. 2004).





[7]Tooke v. City of Mexia, 197 S.W.3d 325, 343
(Tex. 2006).  The City=s design of the drainage
facility that affected the Wilson property was a governmental function.  See Tex.
Civ. Prac. & Rem. Code Ann. ' 101.0215(a)(9) (Vernon 2005) (including Asanitary and storm sewers@ among a municipality=s governmental functions
for purposes of tort liability); PKG Contracting, Inc. v. City of Mesquite,
197 S.W.3d 388, 388-89 (Tex. 2006) (holding that the City was acting in its governmental
capacity when it contracted to construct a storm drainage system); City of Tyler v. Likes, 962 S.W.2d 489, 501 (Tex. 1997) (holding that a city=s design and planning of its culvert system are
quasi‑judicial functions subject to governmental immunity).





[8]Tex. Nat. Resource Comm=n v. IT‑Davy, 74 S.W.3d 849, 855 (Tex. 2002).





[9]Waco ISD v. Gibson, 22 S.W.3d 849, 851 (Tex. 2000).





[10]Id.; Tex. Ass=n of Bus. v. Tex. Air Control Bd., 852 S.W.2d 440, 445 (Tex. 1993).





[11]IT‑Davy, 74 S.W.3d at 855.





[12]See Tex. Dep=t of Transp. v. Garza, 70 S.W.3d 802, 803, 808
(Tex. 2002) (dismissing case because trial court lacked subject matter
jurisdiction).





[13]Wichita Falls State Hosp. v.
Taylor, 106 S.W.3d
692, 696 (Tex. 2003); City of
LaPorte v. Barfield,
898 S.W.2d 288, 291 (Tex. 1995).





[14]Tex.
Gov=t Code Ann. ' 311.034 (Vernon Supp.
2006).





[15]See, e.g., Tex. Civ. Prac. & Rem. Code Ann. ' 101.025(a) (Vernon 2005)
(ASovereign immunity to
suit is waived and abolished to the extent of liability created by this
chapter.@); id. ' 63.007(b) (Vernon Supp.
2006) (AThe state=s sovereign immunity to
suit is waived only to the extent necessary to authorize a garnishment action
in accordance with this section.@); id. ' 81.010(d) (Vernon 2005) (AGovernmental immunity to
suit is waived and abolished only to the extent of the liability created by
Subsection (b).@);  Tex.
Gov=t Code Ann. ' 2007.004 (Vernon 2000) (ASovereign immunity to
suit and liability is waived and abolished to the extent of liability created
by this chapter.@); Tex. Prop. Code Ann. ' 74.506(c)  (Vernon Supp. 2006) (AThe state=s immunity from suit
without consent is abolished with respect to suits brought under this section.@).





[16]Wichita Falls State Hosp., 106 S.W.3d at 697.  





[17]Id. 
For example, the supreme court has found waiver when the provision in
question would be meaningless unless immunity was waived.  See Kerrville State Hosp. v. Fernandez,
28 S.W.3d 1, 8 (Tex. 2000).





[18]Wichita Falls State Hosp., 106 S.W.3d at 697; see Magnolia Petro.
Co. v. Walker, 125 Tex. 430, 83 S.W.2d 929, 934 (Tex.) (stating that
ambiguities in the terms of a legislative grant of a right or privilege by the
State must be construed in favor of the State), cert. denied, 296 U.S.
623 (1935).





[19]Wichita Falls State Hosp., 106 S.W.3d at 697-98.





[20]Id. at 698; see IT‑Davy,
74 S.W.3d at 854 (noting that A[s]ubjecting the government to liability may hamper
governmental functions by shifting tax resources away from their intended
purposes toward defending lawsuits and paying judgments@).





[21]See, e.g., Kerrville
State Hosp.,
28 S.W.3d at 9-10 (limiting damages to those authorized by the Texas Tort
Claims Act); Barfield, 898 S.W.2d at 299 (same); Tex. Educ. Agency v.
Leeper, 893 S.W.2d 432, 446 (Tex. 1994) (finding a waiver for attorney=s fees only).





[22]See Tex. Water Code Ann. ' 1.002(a) (Vernon 2000) (providing that A[t]he Code Construction
Act (Chapter 311, Government Code) applies to each provision of this code@).





[23]Tex.
Gov=t Code Ann. ' 311.005(2) (Vernon
2005).





[24]Wichita Falls State
Hosp.,
106 S.W.3d at 699-700; see also Duhart v. State, 610 S.W.2d 740, 742-43
(Tex. 1980) (holding that the Legislature=s incorporation of a Workers= Compensation Act
provision preserving a private employee=s cause of action for exemplary damages into a
statute providing compensation benefits for state highway department employees
did not clearly and unambiguously waive the State=s immunity from suit for
such damages).





[25]See Wichita Falls State
Hosp., 106 S.W.3d at 698-700 (concluding that the Legislature did not waive
sovereign immunity from suits based on alleged violations of the Apatient=s bill of rights@ found in chapter 321 of
the health and safety code); accord Tex. Dep=t of Mental Health & Mental Retardation v. Lee, 38 S.W.3d 862, 870-71
(Tex. App.CFort Worth 2001, pet.
denied) (holding same).





[26]See Tex. Health & Safety Code Ann. ' 321.003 (Vernon 2001); id.
' 321.001(4) (A>Mental health facility= has the meaning assigned
by Section 571.003.@); id. ' 571.003(12) (Vernon
Supp. 2006) (A>Mental health facility=@ means: (A) an inpatient
or outpatient mental health facility operated by the [Texas Department of
Mental Health and Mental Retardation], a federal agency, a political subdivision,
or any person[.]@).





[27]Section 321.001 is the ADefinitions@ section of chapter 321
of the  health and safety code.





[28]Wichita Falls State
Hosp.,
106 S.W.3d at 701 (citations omitted). 
In contrast, the supreme court has stated that the Wrongful Death Act
waives sovereign immunity because it provides that A[a] person is liable for damages arising from
an injury that causes an individual=s death,@ and the statute itself defines Aperson@ to include some
governmental entities rather than incorporating a definition from another
statute.  Tex. Civ. Prac. & Rem. Code Ann. '' 71.001(1)B(2), .002(b) (Vernon
Supp. 2006) (emphasis supplied); see Barfield, 898 S.W.2d at 296.





[29]See Wichita Falls State
Hosp.,
106 S.W.3d at 701.  





[30]See id; see also Magnolia
Petro. Co.,
83 S.W.2d at 934 (ALegislative grants of
property, rights, or privileges must be construed strictly in favor of the
state . . . and whatever is not unequivocally granted in clear and explicit
terms is withheld.  Any ambiguity or
obscurity in the terms of the statute must operate in favor of the state.@).  If anything, section 11.086 is even more
ambiguous than section 321.003 of the health and safety code.  Section 321.003 provides that A[a] . . . mental health
facility
that violates [the patient=s bill of rights found in chapter 321] . . . is
liable to a person receiving care or treatment in or from the facility who
is harmed as a result of the violation.@  Tex. Health & Safety Code Ann. ' 321.003(a) (emphasis
supplied).  In contrast, section 11.086
of the water code merely provides that Ano person may divert . . . the natural flow of
surface waters . . . in a manner that damages the property of another@; it does not state that
such a person Ais liable@ for the diversion.  Tex.
Water Code Ann. ' 11.086(a).  Both the health and safety code and the water
code provide that a person who is injured as a result of a violation of the
respective statutes may recover damages. 
Tex. Health & Safety Code
Ann. ' 321.003(b); Tex. Water Code Ann. ' 11.086(b).





[31]Wichita Falls State
Hosp.,
106 S.W.3d at 701.  This conclusion is
further supported by the fact that, after the underlying lawsuit was filed, in
2001 the Legislature added section 311.034 to the Code Construction Act, which
provides in pertinent part that Athe use of >person,= as defined by Section 311.005 [of the government
code] to include governmental entities, does not indicate legislative intent to
waive sovereign immunity unless the context of the statute indicates no other
reasonable construction.@  Tex.
Gov=t Code Ann. ' 311.034.





[32]Wichita Falls State Hosp., 106 S.W.3d at 697-98.





[33]See Tex. Water Code Ann. '' 11.081B.097 (Vernon 2000 & Supp. 2006).  Compare Leeper, 893 S.W.2d at 446
(holding that sovereign immunity was waived under section 37.006 of the
Declaratory Judgments Act because the Legislature required that municipalities
must be joined in suits construing their legislative pronouncements and
provided that they would be bound by any resulting judgments).





[34]Wichita Falls State
Hosp.,
106 S.W.3d at 697-98, 701.





[35]Id. at 698.





[36]Id. at 701; see, e.g.,
Tex. Civ. Prac. & Rem. Code Ann.
' 101.023(c) (Vernon 2005)
(ALiability of a
municipality under this chapter is limited to money damages in a maximum amount
of . . . $100,000 for each single occurrence for injury to or destruction of
property.@); id. ' 81.010(b) (providing
that a patient may obtain only an order requiring the governmental unit to
discharge the mental health services provider who committed the conduct, court
costs, and attorney=s fees); Tex. Gov=t
Code Ann. ' 2007.023(b) (Vernon
2000) (A[T]he governmental entity
is only liable for[] invalidation of the governmental action or the part of the
governmental action resulting in the taking.@); id. ' 554.003(c) (Vernon 2004) (A[A] public employee may
not recover compensatory damages for future pecuniary losses, emotional pain,
suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary
losses in an amount that exceeds [the amounts set by statute].@).





[37]See Wichita Falls State
Hosp., 106 S.W.3d at 702.





[38]For the reasons discussed
in the preceding parts of this opinion, we decline to follow the Dallas Court
of Appeals= holding to the contrary
in Abbott v. City of Princeton, 721 S.W.2d 872, 876 (Tex. App.CDallas 1986, writ ref=d n.r.e.), disapproved
on other grounds, Schneider Nat=l Carriers, Inc. v. Bates, 147 S.W.3d 264, 281
(Tex. 2004).  Abbott did not apply
the clear and unambiguous standard adopted by the supreme court and codified by
the Legislature in the Code Construction Act. 
We also note that Abbott and Thomas v. Hale County, 531
S.W.2d 213, 215 (Tex. Civ. App.CAmarillo 1975, no writ), on which the Wilsons
rely, are inapposite because they focused on whether the governmental entities
at issue were Apersons@ for purposes of section
11.086 and its predecessor, not specifically on whether the Legislature had
waived the entities= sovereign immunity from
suit.





[39]197 S.W.3d 371, 376 (Tex.
2006) (op. on reh=g).





[40]Id. at 377.





[41]BHP Petro. Co. v. Millard, 800 S.W.2d 838, 841
(Tex. 1990).  This definition of a claim
for affirmative relief has its origin in the law of non-suit, but it has been
adopted by courts applying Reata=s rule concerning waiver of immunity.  See, e.g., Nat=l Enter., Inc. v. E.N.E.
Props.,
167 S.W.3d 39, 43 (Tex. App.CWaco 2005, no pet.) (AA claim for affirmative
relief is stated if the counterclaim alleges a cause of action independent of
the plaintiff=s claim.@); Ray Ferguson
Interests, Inc. v. Harris County Sports & Convention Corp., 169 S.W.3d
18, 23 (Tex. App.CHouston [1st Dist.] 2004,
no pet.) (ATo qualify as a claim for
affirmative relief, a defensive pleading must allege that the defendant has a
cause of action, independent of the plaintiff=s claim, on which he
could recover benefits, compensation or relief, even though the plaintiff may
abandon his cause of action or fail to establish it.@).





[42]See Dequire v. City of
Dallas, 192 S.W.3d 663, 666-67 (Tex. App.CDallas 2006, no pet.)
(holding that defendant=s prayer for attorney=s fees asserted in
response to a plaintiff=s declaratory judgment
claim is a claim for affirmative relief within the meaning of Reata); Town
of Flower Mound v. Upper Trinity Reg=l Water Dist., 178 S.W.3d 841, 844 (Tex. App.CFort Worth 2005, no pet.)
(holding that defensive claim for attorney=s fees under the Declaratory Judgments Act is a
separate cause of action that may be asserted independently, separate and apart
from the plaintiff=s request for declaratory
judgment); see generally Tex.
Civ. Prac. & Rem Code Ann. ' 37.009 (Vernon 1997) (AIn any proceeding under
this chapter, the court may award costs and reasonable and necessary attorney=s fees as are equitable
and just.@).





[43]Tex.
R. App. P.
43.2(e).  There are no other claims
pending in this appeal, because the supreme court has rendered judgment against
the Wilsons on inverse condemnation, their only other claim against the
City.  City of Keller, 168 S.W.3d
at 830.





[1]The City did plead immunity in its answer,
but no hearing was held or order entered on its jurisdictional claims.





[1]City of Keller v. Wilson, 86 S.W.3d 693 (Tex.
App.CFort Worth 2002), rev=d, 168 S.W.3d 802 (Tex.
2005). 





[2]City of Keller v. Wilson, 168 S.W.3d 802 (Tex.
2005). 





[3]The City of Keller was previously
represented by different counsel.





[4]City of Keller v. Wilson, No. 02-00-00183-CV,
2006 WL 1716130, at *7 (Tex. App.CFort Worth June 22, 2006, no pet. h.) (op. on
remand).





[5]The majority does not cite any case
holding that the issue of governmental immunity can be raised for the first
time after mandate has issued from a state=s high court.





[6]See Tex. R. App. P. 38.1(e).





[7]See Tex. R. App. P. 53.2(f), 53.4. 





[8]See Tex. R. App. P. 53.4.





[9]See Tex. R. App. P. 18.7; O'Neil v. Mack Trucks, Inc., 551
S.W.2d 32, 32 (Tex. 1977).  





[10]A post-submission brief filed by the City
of Keller in the supreme court mentioned governmental immunity in the context
of inverse condemnation, but it did not seek relief on the theory that any
court lacked jurisdiction on any claim based on governmental immunity and
sought only the relief prayed for in the City of Keller=s brief on the merits.





[11]Likewise, the supreme court=s opinion simply
instructs us to address the Ajury=s alternate verdict for the Wilsons on a claim
under the Texas Water Code.@  City
of Keller, 168 S.W.3d at 830.  















 [COMMENT1]

MAJORITY BY CAYCE; CONCUR AND DISSENT BY
LIVINGSTON; DISSENT BY WALKER